TUMLIN, trustee, *et al. vs.* VANHORN.

77 315
118 668

1. While it is the duty of courts to enforce contracts and protect the rights of parties arising from them, and while, upon sufficient legal or equitable grounds, they may relieve parties from contracts, yet they have no power to make them for parties, or, when deliberately made, to modify or change them in any material respect. Therefore, where a contract of sale contemplated only the holding of title by the vendor as security for the unpaid purchase money, it was improper, on the hearing of an application for injunction and receiver, for the chancellor to require the defendant to give security for the forthcoming of the rent notes taken from his tenants and for the appropriation of the rents of the land to the payment of complainant's debt.

2. The power of appointing receivers and ordering injunctions should be prudently and cautiously exercised, and except in clear and urgent cases, should not be resorted to. Especially is this so where the party invoking the interposition of a court of chancery has a plain and adequate remedy at law by suit, garnishment and levy for the protection and enforcement of the rights reserved to him under the contract.

3. The conditions imposed by the order in this case were unusual and onerous. There was no adequate reason for enjoining the transfer of notes and other obligations given for rent, either where

a receiver had been appointed to take charge of them, or where the parties had given security in the terms of the order to appropriate them to the complainant's debt.

4. Where a vendor sold land and gave a bond for title, reserving the title as security for the payment of the purchase money, and it did not appear that the purchaser or his *cestui que trust* was less solvent and able to pay than when it was contracted, or that any deterioration in the value of the land was caused by the waste and mismanagement of the persons to whom it was sold; the mere failure to pay an instalment of the purchase money when due would not furnish a ground for injunction and receiver.

(*a.*) This case differs from that of *Tufts vs. Little*, 56 *Ga.* 139.

5. This court decides only such questions as are made by the transcript of the record and bill of exceptions, and therefore will not consider a motion to dismiss the writ of error, on the ground that the clerk made a separate certificate that the chancellor's order requiring security to prevent the appointment of a receiver, had been complied with, no bond accompanying such certificate, and it being sent up after the record was completed and transmitted to this court.

March 5, 1887.

Contracts. Equity. Injunction. Receiver. Practice in Superior Court. Vendor and Purchaser. Practice in Supreme Court. Before Judge WILLIS. Muscogee County. At Chambers, January 1, 1887.

On December 18, 1886, W. J. Vanhorn exhibited his bill against Wm. M. Tumlin, trustee, and Mrs. Carrie E. Lee, alleging, in brief, as follows: On November 8, 1885, complainant owned a tract of land in Chattahoochee county. Tumlin represented that he was the trustee of Mrs. Lee and had effects of hers in his hands. Such representations were false, as complainant now alleges, but relying on them at the time, he sold the land to Tumlin, as trustee, for thirty-five bales of cotton, each to weigh 500 pounds. Two notes were given, each for seventeen and one-half bales of cotton, one due December 15, 1886, and the other December 15, 1887. Complainant gave a bond for title to Tumlin, trustee, and put him in possession. The first note is past due and unpaid. The property, by use

Tumlin, trustee, *et al. vs.* Vanhorn.

and failure to keep it in repair, is deteriorating in value, and will not bring enough to pay the two notes. Tumlin is insolvent, and Mrs. Lee has no property upon which money could be raised by judgment, so that complainant will be compelled to look to the land for the payment of his debt. The prayers were for a receiver to take charge of the land, sell it and apply the proceeds to the payment of the debt, and if not sufficient to discharge it, that the rents also be applied thereto; that complainant have judgment for the amount of the note past due; and for *subpœna* and general relief.

The defendants answered the bill, in brief, as follows: They admit the sale and purchase, but deny that any representations were made to induce the former. Tumlin is, in fact, trustee for Mrs. Lee and her minor child, created so by an instrument in writing making him her trustee with full power to manage her property, to purchase, sell, mortgage or hypothecate it, and to make any trade or arrangement which he might think would be for the benefit or interest of the *cestuis que trust.* He has assets in his hands of the value of $1,800 or $2,000. He made the trade with complainant in good faith and expects to pay the indebtedness in full. He made a poor crop during the first year, and was therefore unable to meet the first note when it fell due. Improvements have been placed on the land, and it has enhanced in value. It is worth more than when bought and will bring more than the two notes for the purchase money.

Affidavits in support of the bill and answer were introduced, but they need not be set out. On the hearing, the chancellor appointed a receiver and granted an injunction. His order is stated in the decision. The defendants excepted.

On the call of the case in the Supreme Court, counsel for the defendant in error moved to dismiss it on the ground that the plaintiffs in error had complied with the older of the chancellor and given bond and security as

required therein before the writ of error was filed, and proposed to support this motion by a certificate from the clerk that such facts were true. The court overruled the motion.

THOS. W. GRIMES; W. A. LITTLE, for plaintiffs in error.

SMITH & THORNTON, by brief, for defendant.

HALL, Justice.

The question presented for determination is, whether the vendor of land sold upon a credit to one professing to act as trustee for another, and who has given notes, signed as trustee, for the payment of the purchase money, in two equal annual instalments, the vendor retaining as security title to the land, is entitled to have the property thus sold placed in the hands of a receiver, " unless the trustee and his *cestui que trust* shall enter into bond, with security, conditioned to hand over, deliver and pay to the complainant all the rents, issues and profits arising from the land sold by him to them, to satisfy the amount that may be recovered against them in that suit, or any other proceeding that may be instituted against them ;" and in the event they shall fail to give the bond, with such security, within thirty days, then that a person named be appointed receiver, " to take charge of the land, rent it out and collect its rents and profits, and to receive from the defendants all evidences of debt for the rent of the same, collect said debts, and retain and preserve the amount arising from such rents and profits until the further order of the court," and notwithstanding such bond and security may be given, or in default thereof such receiver be appointed, and shall enter upon the duties of his appointment, the defendants can be lawfully enjoined and restrained " from transferring, trading, hypothecating, or in any way or manner disposing of any note, obligation, or contract for the rent of the land, until the further order of the court,"

under statements, charges and allegations in the bill to the effect that the defendants were insolvent (whether at the making of the contract or whether they had become so since does not appear); that the contract was procured by misstatements as to the maker of the notes being a trustee, and as to the property owned by the party named as *cestui que trust;* and that the land was deteriorating in value, in consequence of the failure and neglect of the defendants to farm it skillfully, and to keep the fencing, ditches, buildings, etc. in proper order and repair; and for that reason would not be sufficient to pay the debt, the first instalment of which had fallen due, and which they had failed and refused to pay.

Nearly all those material allegations were traversed and denied by the answers of both defendants, and upon some of the points, especially as to the insolvency of Carrie E. Lee, the *cestui que trust,* and the value of the land, the affidavits presented at the hearing were in direct and distressing conflict. It was shown by the defendants that the fences had been repaired and the ditches cleared out, and the buildings improved, and some of them added to and enlarged; according to the affidavits presented by the defendants, the land had, since the sale, appreciated in value; the instalment due had not been promptly paid, only because the year was unpropitious and the crop made was short. Efforts were being made, however, with a fair prospect of success, to raise funds to pay this debt. The *cestui que trust* ratified and approved the transaction and acknowledged her liability therefor. The instrument appointing her co-defendant her trustee was produced and submitted to the court, and while by its terms it vested in him no title to the property, it nevertheless appointed him trustee by name for Mrs. Lee and her minor son, and conferred upon him full and complete power to manage and control any and all property belonging to her; and authorized him to sell, mortgage, or hypothecate, or to use any legitimate means to raise money to make crops for that and

succeeding years, and to make any trade or arrangements which in his judgment he might deem proper for her and her children's interests, and perform and do any and all business connected with the "*trusteeship*," without order or writing from her. The magistrate who drew the papers embodying the contract of bargain and sale was present and witnessed the transaction, and fully sustains the trustee in his statement that no representations were made as to the property owned by the *cestui que trust* to induce the complainant to make the sale. In this contract between the parties, there was no stipulation that other security than the title to the land should be given for the payment of the debt, nor was there any that the rents, issues and profits arising therefrom should be set apart and appropriated to its extinguishment. There was no reason stated by the bill why this contract should be rescinded, and no prayer to that effect.

1. It is unquestionably the duty of courts to enforce contracts and protect the rights of parties arising from them. Upon sufficient legal or equitable grounds, they may also relieve parties from them; but they have no power to make them for parties, and, when deliberately made, to modify or change them in any material respect. The condition imposed by this order, as to giving security for the forthcoming of the rent notes, and for the appropriation of the rents of the land to the payment of complainant's debt, is an addition to the contract as originally entered into between the parties. The court of chancery had no right to impose it, as was held by this court in *Hannahan vs. Nichols*, 17 *Ga.* 77, 79, and also in *Jones et al. vs. Holliday*, 37 *Ga.* 569, 573. These cases are decisive of the controlling question made in the one under review.

2. The power of appointing receivers and ordering injunctions should be prudently and cautiously exercised, and except in clear and urgent cases should not be resorted to. Especially is this so where the party invoking the interposition of a court of chancery has a plain and adequate

remedy at law for the protection and enforcement of the rights reserved to him under the contract. In this case, he could have instituted his suit at law, and reached the evidences of debt enjoined, by process of garnishment; and when he obtained his judgment, might have levied the execution issuing thereon upon the land by first making the defendant a title thereto, as provided by the statute, or he might have proceeded, in like manner, to levy an attachment upon the land for his purchase money. *Vide Hannahan vs. Nichols ut sup.*, where the power in question is characterized by Benning, J., who delivered that opinion, as a "dangerous power," because, as we infer from his reasoning, of the serious consequences which may follow its exercise, and its liability to abuse by reason of the liability to error in applying it to circumstances not falling within the evils and wrongs it is designed to prevent rather than to remedy.

3. The conditions imposed by this order were unusual and onerous. There could, as we think, be no adequate reason for enjoining the transfer of notes and other obligations given for rent, either where a receiver had been appointed to take charge of them, or where the parties had given security in the terms of the order, to appropriate them to the payment of the complainant's debt. *Bleyer et al. vs. Blum & Co.*, 70 *Ga.* 558.

4. The bill, as we consider, made no case, either for a receiver or injunction. It was not shown that the defendants were less solvent and able to pay when the debt matured than they were when it was contracted. The complainant took the risk of the land's deteriorating in value, and it was not made to appear that this deterioration was caused by the waste and mismanagement of the persons to whom it was sold. *Jordan vs. Beal*, 51 *Ga.* 602. This case is precisely in point, and differs from that of *Tufts vs. Little*, 56 *Ga.* 139, because in that it appeared that the defendant had been in possession of the land four years; that there was waste and mismanagement; and that he

v 77 21

had paid none of the purchase money, had become insolvent since the purchase, and had on his own petition been adjudged a bankrupt.

5. We can decide only such questions as are made by the transcript and bill of exceptions, and cannot therefore consider the point raised in the certificate of the clerk of the superior court, sent up after the record was completed and sent to this court, and was for the first time presented on the hearing of the case, that the chancellor's order requiring security to prevent the appointment of a receiver had been complied with; because the bond, which it is insisted had that effect, did not accompany the certificate. Besides this, there is an exception by the defendants to the condition requiring a bond; and we think that exception well taken. Under our view of the case, the order imposing this condition must be set aside, and everything done in pursuance of it must share the same fate. *Bleyer et al. vs. Blum & Co. ut sup.* The injunction, however, was not ordered upon that or any other condition, and the compliance therewith does not remove it. It is our opinion, as before expressed, that its grant was erroneous. The entire interlocutory decree in relation to the receiver and the grant of the injunction must be rescinded and set aside.

Judgment reversed.