## GOODRICH *v.* GEORGIA RAILROAD & BANKING CO.

1. While under the code an injunction which is purely mandatory in its nature can not be granted, the court may grant an order the essential nature of which is to restrain, although in yielding obedience to the restraint the defendant may incidentally be compelled to perform some act.
2. Where one wrongfully diverts a stream from its natural channel, and thus prevents it from flowing upon the land of a lower proprietor, the court may,

at the instance of the latter, grant an injunction to prevent the owner of the land above from diverting the water from its natural course, although the effect of the order may be to require the defendant to destroy a ditch, or do other acts necessary to restore the water to its natural channel; and this is true though the diversion of the water was complete at the time the application for injunction was made, when it appears that the same was promptly made and there was no unnecessary delay.

3. The case upon its merits is controlled by the rulings above announced, and the judge did not abuse his discretion in granting the injunction.

Submitted March 1, — Decided April 26, 1902.

Injunction. Before Judge Brinson. Richmond superior court. January 27, 1902.

*Henry C. Roney*, for plaintiff in error.
*Joseph B. & Bryan Cumming*, contra.

COBB, J. This was an application for an injunction, in which the Georgia Railroad and Banking Company was the plaintiff and Mrs. Margaret M. Goodrich was the defendant. The substance of the allegations of the petition was as follows: The plaintiff had acquired title from the husband of the defendant to two acres of land. The purpose of so doing was to obtain a water supply for the use of the plaintiff in operating its railroad. Running through the land thus acquired were two branches or rills, and soon after the land was acquired the plaintiff erected a dam across these branches, which collected the water into a pond, and a pipe conducts the water from this pond to water-tanks located at a station on the line of the plaintiff's railroad. These branches have their source in two perennial springs on the land of the defendant at a higher elevation than the pond, and the pond is fed and supplied from such springs. The defendant is proceeding to sink a ditch upon her land which will have the effect to cut off and divert from the pond the supply of water that would naturally flow therein, which will result in the destruction of the pond, and this act on the part of the defendant will result in damages to the plaintiff which will be irreparable in their nature, and the defendant is unable to respond in damages for the wrong. The prayer of the petition was that the defendant be enjoined from digging the ditch described in the petition, or from any other work on the land of petitioner or her own land which will interfere with petitioner's right to the flow of water from the springs, or either of them, or impair or diminish the supply of water from them, or either of them.

Upon this petition the judge granted a temporary restraining order until the application for injunction could be heard. By an amendment the plaintiff alleged that the work upon the ditch described in the petition had progressed so far before the issuance of the restraining order that an order merely restraining the defendant from further prosecuting the construction of the ditch would not give plaintiff the relief to which it was entitled, and prayed that the defendant be enjoined from using the ditch for the purpose of draining the water or for other purposes which would have the effect of diverting the flow of the streams, or either of them, from the pond; that the defendant be enjoined from diverting the streams, or either of them, by means of ditches or otherwise; and that the defendant be enjoined from using the water to which the plaintiff is entitled, and from reducing the height of the water in the pond. After the restraining order was granted, but before the day set for the hearing, on oral application of the plaintiff the judge passed an order authorizing the plaintiff to go upon the lands of the defendant and erect a dam across the ditch which had been constructed, so as to cause the water to flow back into its natural channel and carry it into the pond; the order reciting that this could be done with "very little work" and "without injury to the defendant," and distinctly providing that the plaintiff should be responsible to the defendant for damages, if any, which would result to her from any change in the status which might be made under the order. At the hearing the defendant filed an answer which set up that the ditch had been completed before the restraining order was granted, and that the same nowhere touches the plaintiff's land; that the springs which furnish water to the pond are wholly upon the land of the defendant, and form no branches or rills, but the water therefrom covers nearly or quite five acres of land which is valuable for farming purposes, and that defendant desired to put the same under cultivation and in order to do so was compelled to drain the land by means of a ditch; that she could not drain it by turning the water into the pond, because the pond backs water upon the defendant's land, and the only way to drain the land was to divert the water below the pond to its original channel before the dam was built; that if defendant is prevented from ditching the land, the same is valueless to her. At the hearing the judge granted an injunction enjoining the defendant "from diverting the water

by any means from the streams, or either of them, described in the petition, so as to prevent the flow of said streams, or either of them, into the pond described in the petition." . The defendant filed a bill of exceptions assigning error upon the order granting an injunction, upon the order allowing the second amendment above referred to, and upon the order authorizing the plaintiff to go upon the land of the defendant and construct a dam across the ditch so as to throw the water back into its natural channel.

The assignment of error last referred to can not be considered, for the reason that the bill of exceptions was not tendered within twenty days from the date of the ruling complained of, and there were no exceptions pendente lite complaining of this ruling.    The objection urged to the allowance of the amendment, which is the subject of the second assignment of error, was that the amendment set forth a new cause of action.  We do not think the amendment subject to this objection.    It was simply an explanation of the effect which the alleged wrong would have upon the rights of the plaintiff and an amplification of the prayers of the original petition.

- The controlling question in the case is that which arises upon the first assignment of error, in which complaint is made of the order granting an injunction.    The evidence before the judge was conflicting upon some of the questions of fact involved.    There was evidence authorizing a finding by the judge that the plaintiff was either the owner of the two acres of land referred to in the petition or had such an interest therein, as against the defendant, as would authorize the erection and maintenance of a pond for the purpose of creating a water supply for its uses in operating its railroad; that the pond was supplied by two branches or rills flowing from the land of the defendant to the land of the plaintiff; that these branches were fed by two springs upon the land of the defendant; that the damages resulting from a diversion of the water would be irreparable; and that even if this were not true, the defendant was unable to respond in damages for the injury thus inflicted.    It is contended that the order granting the injunction, when applied to the facts of the present case, would have no other effect than to compel the defendant to perform an act, and that the writ of injunction can not be used for this purpose under the law of this State. In *Thomas* v. *Hawkins*, 20 *Ga.* 126, 134, it was held that "the court will not, by injunction granted upon an interlocutory appli-

cation, direct the defendant to *perform* an act." The rule laid down in this decision became a part of the Code of 1863, and is now contained in Civil Code, § 4922, in the following language: "An injunction can only restrain, it can not compel a party to perform an act. It may restrain until performance." The ruling in *Thomas* v. *Hawkins* was followed in *Georgia Pacific Railway* v. *Douglasville,* 75 *Ga.* 828, where it was held that it was not within the power of a chancellor at chambers to grant a mandatory order requiring a municipal corporation to remodel or remove any part of a bridge forming a part of one of its streets. In *Russell* v. *Mohr-Weil Lumber Co.,* 102 *Ga.* 563, it was held that an order which if enforced would result in the dispossession of the defendant and the admission of the plaintiff into possession of the premises in controversy was, in legal effect, a mandatory injunction, and such an order, having been granted without notice, was erroneous, even if such injunctions could be granted at all in this State. In *Vaughn* v. *Yawn,* 103 *Ga.* 557, it was held that the office of an injunction being, under the code of this State, merely to restrain and not to compel the performance of an act, this remedy is not available for the purpose of evicting a party from the actual possession of land, the right to which is in dispute between himself and another. To the same effect see *Paschal* v. *Tillman,* 105 *Ga.* 494. In all of these cases it will be found, upon examination, that the order complained of, if carried into effect, would have required the party against whom it was issued to perform some affirmative act which was the main and controlling purpose of the order. If the main purpose of the petition is to compel the performance of an act, then, under our code, injunction can not be used as a remedy to accomplish this purpose. Under our code injunction can be used only to restrain.

It does not necessarily follow, however, because injunction can be used only for this purpose, that it can not be used when the effect of yielding obedience thereto would incidentally require the performance of some act, if the main purpose of the injunction is to restrain the doing of some wrongful act. It seems to us that the true meaning of the section above quoted is, that the court can not issue a purely mandatory order, but that the court can grant an injunction the essential nature of which is to restrain, although in yielding obedience to the restraint the defendant may be incidentally required to perform some act. Under no other view than

this could the decision of this court in *City of Atlanta* v. *Warnock*, 91 *Ga.* 210, ever have been rendered. In that case it was alleged that the City of Atlanta was maintaining manholes in its system of sewerage in such a condition as to allow the escape of noxious gases, and an order enjoining the city "from continuing said manholes in such condition as to allow the escape of noxious gases" was passed. This order could not have been complied with in any other way than by the city authorities performing some positive act having the effect to prevent the flow of noxious gases. While the court would have had no right to require the city to construct and maintain manholes of a given character and description, because an order to this effect would have been purely mandatory in its nature, it did have a right, in the exercise of its power to restrain, to prevent the continuation of the manholes that were in use in their then condition, notwithstanding the effect of this restraint would be to compel the city authorities to perform some act in reference to the manholes which would have the effect to prevent the escape of noxious gases. See also, in this connection, *Holmes* v. *Atlanta*, 113 *Ga.* 962. So in a case like the present, when the plaintiff had a right to have the water flow from the land of the defendant upon its land, with its quantity undiminished, the defendant could be by the court, in the exercise of its power to restrain, enjoined from diverting the water from its natural channel, notwithstanding it was necessary, in order to render complete obedience to the order of the court, to do a positive act, that is, to close the ditch which had the effect of diverting the stream from its natural course. The defendant by constructing the ditch had diverted the water from its natural course. The court had a right to restrain the defendant from doing this act, that is, diverting the water, and notwithstanding the diversion was completed at the time the application for injunction was filed, the court still had authority to enjoin the continuance of this act, and the defendant must cease to divert the water; and if the only way to obey the order of the court is to destroy the ditch, or do some other act which will throw the water back into its natural channel, this act must be done as an incident to an obedience of the order, and the fact that such an act will have to be done does not make the order restraining the diversion of the water a mandatory injunction.

*Judgment affirmed. All concurring, except Lewis, J., absent.*